FROM: 21214055
TO:
SUBJECT: Judge
DATE: 09/05/2017 10:25:00 AM

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 11 2017 ★

BROOKLYN OFFICE

*[Handwritten note: File and docket. This court does not have a case before it]*

Jeremy D. Otrosinka ID# 21214-055
FCI Milan
P.O. Box 1000
Milan, MI 48160

*[Handwritten note: author of letter, the court will take no action. So ordered. JW 9/20/17]*

Dated: September 5th, 2017

To the Honorable Jack B. Weinstein:

This is not an attempt to diminish the severity of the crime I had committed. I take full responsibility for my actions and fully regret the poor decisions I made. With this letter I respectfully ask, Your Honor, to review the contents herein, cases within, and the enclosed document in its entirety.

I will not try to construct this letter in a formal context, nor will I attempt to use legal terminology as I am not an attorney. I do wish however, to offer Your Honor my opinion regarding your unique and factual offerings relating to the 2G2.2 non-production sentencing guideline. I hope Your Honor does not mind that I remain candid throughout.

First, I will begin by providing Your Honor with a brief overview of my situation. I was arrested and jailed on December 11, 2011. On July 3rd, 2013 I had been sentenced to 180 (15 years) of federal incarceration, to be followed by a lifetime term of supervised release. I had been charged with, and pled guilty too One (1) Count of Possession, and One (1) Count of Distribution. The Case was before the Honorable William M. Skretney within the Western District of New York. (Case No.: 12-CR-0300S)

Shockingly, my attorney failed to raise argument pertaining to the "seriously flawed" guideline. By the time I I had discovered his ineffectiveness it was far to late. Although I attempted to file a 2255, the one year limitations period had expired, and the case denied.

The entire 2255 proceeding, including the appeal, was a total disaster. I was never notified of the denial of the 2255 until my "Motion to Amend 2255" was transferred to the Second Circuit as a Second or Successive 2255. Of course I had advised the Court of this, but it did no good. Ultimately, the 2255 Petition was denied without ruling on the merits. (Case No.: 15-CV-0325S).

Desperately, I filed a 2241 with the District Court for the Eastern District of Michigan, Southern Division, arguing the constitutionality of the guideline. (Case No.: 16-10058). As expected, the 2241 was denied as the improper

vehicle. I then filed an application for writ for certiorari with the United States Supreme Court (Case No.: 17-5134) regarding the denial of the 2241. That case is currently pending in the High Court.

Most recently, I filed a "Motion for Permission To Proceed" with a civil action, against the United States, in the District Court for the Eastern District of Michigan, Southern Division, in hopes to file a "Complaint For Declaratory Judgment," which I enclosed a true copy for Your Honor. Again, I have yet to file this Complaint as I am awaiting a response from the "Motion for Permission to File Complaint."

It seems Your Honor is one of the few that "get it." Specifically, I appreciate how you strategically elected to title non-production cases. By using only the offenders initials makes it difficult for potentially dangerous inmates to look-up their case information. For a sex offender, such as myself, a term of incarceration ventures well beyond the "norm" of a typical term of incarceration. The harassment, threats, verbal abuse, being spit upon, and the stealing of personal property is only a small bit of what I face on a day-to-day basis. Returning to my cell only to find someone had urinated on my mattress, or perhaps the sexual advances make it the most difficult. Recently, I filed a report under PREA.

The troubles at my home is another issue all together. My mother losing her husband (my step-father) to cancer shortly after losing her oldest son (my brother) to cancer is the most disheartening (See, www.NeverQuitForChad.org). My mother, now a widowed homeowner, alone taking care of the home daily duties is in itself awful. Recently, she herself had been diagnosed with cancer. Remarkably, thanks to God, she is now in remission. She is such a strong woman. I don't know how she does it.

It's important that Your Honor understands I am not seeking sympathy. I wish to direct any such sympathy to the innocent children in which I had re-victimized relating to the crime I am guilty of. The truth is, I'm not exactly sure why I choose to write to Your Honor. Maybe to reinforce the facts you offer within your judgments, or perhaps in hopes of someone in your authoritative position can offer, and support much needed change regarding the 2G2.2 Guideline.

To conclude - I pray this nightmare will end sooner than later. I pray that my children will soon be able to get their father back. I pray I can soon provide and care for my mother, and she get her son back. I pray for the children I hurt. Lastly, I pray Your Honor do whatever is necessary, within your power, to help me, and others receive a constitutionally sound sentence without the influence of an unconstitutional sentencing guideline. I'm sorry for what I've done and take full responsibility for my actions. However, 15 years of this is completely and utterly ridiculous.

Very Truly Yours,

*Jeremy D. Otrosinka*

*As of September 5, 2017, this Complaint has not yet been filed.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

---

Jeremy D. Otrosinka, pro se, Plaintiff

-vs-

United States of America, Respondent

---

Docket No.:

COMPLAINT FOR
DECLARATORY JUDGMENT

Jeremy D. Otrosinka, pro se, Plaintiff, seeks declaratory, monetary, and/or injunctive relief against Defendants, United States of America, specifically, the United States Congress, as follows:

## NATURE OF THE ACTION

1. This is an action brought under the Necessary and Proper Clause (Art. 1, Section 8, cl. 18), Commerce Clause, the Fifth Amendment, the separation of powers doctrine, and Article III of the U.S. Constitution. Further, this action is brought by the Administrative Procedure Act ("APA"), 5 U.S.C. Section 701; the Declaratory Judgment Act, 28 U.S.C. Section 2201 for declaratory and/or injunctive relief to remedy Defendants' pattern and practice of ultra vires conduct in excess of statutory and constitutional authority, and in deprivation of Plaintiff's and third party procedural and substantive due process rights.

2. In an effort to further punish child pornography offenders, Congress has engaged and continues to engage in a pattern and practice of causing undue harm to the Plaintiff, public, and other third parties (potential offenders), to which it (Congress) provides vital legislative services, oversight, and regulations of federal sentencing guidelines. With the enactment of the PROTECT Act of 2003, Congress acted in excess of their statutory authority, contrary to law, and violates Plaintiff's constitutional rights. Furthermore, Congress acted beyond their power and authority governed by, and provided by Article I of the U.S. Constitution. Courts are being forced to violate Article III by rewriting legislation in order to issue just and proper sentences.

3. To redress irreparable harm to its rights, Plaintiff seeks declaratory, monetary, and/or injunctive relief.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. Section 1331 because the action arises under the U.S. Constitution and Administrative Procedure Act, along with the Declaratory Judgment Act.

5. Venue appropriately lies in this Court pursuant to 28 U.S.C. 1391(b) and 28 U.S.C. 1391(e), because the Eastern District of Michigan, Southern Division, is a judicial district in which at least one defendant resides, and because a substantial part of the acts or omissions give rise to the claims occurred in the Eastern District of Michigan, Southern Division, where the Plaintiff resides.

6. The United States, including its departments and agencies, is not immune to suit for actions arising under the U.S. Constitution and APA.

7. This is not an action for review of an administrative order or to affirm, amend, modify, or set aside any part of an order and, therefore, the statutory procedure prescribing direct and exclusive review in this Court under 28 U.S.C. 2241 or 28 U.S.C. 2255 does not apply. Instead, this action constitutes a broad challenge to the unconstitutional, unlawful, and ultra vires practices or procedures employed by the Defendants.

8. This Court has jurisdiction over Plaintiff's claim because a finding of preclusion would foreclose all meaningful judicial review.

## NECESSARY AND PROPER CLAUSE - CONSTITUTIONAL FRAMEWORK

9. Before Congress is Constitutionally authorized to pass a law or Act, Congress must base their conclusions upon facts and evidence informing their legislative decisions. The Supreme Court of the United States made this requirement clear, Congress "lays down policies and establishes standards but leaves to select instrumentality, of informed judgment and discretion, determination of facts and reaching of conclusions based upon such facts." Oklahoma v. U.S. Civil Service Com., (1946 CA10 Okla) 153 F. 2d 280, affd, (1947) 330 US 127, 91 L Ed 794, 67 S. Ct. 544.

10. The Constitution sets forth Congress' limited powers in Article 1. The final clause of Section 8, the Necessary and Proper Clause, gives Congress power "to make all laws which shall be necessary and proper for carrying into execution the foregoing Powers and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." (Art. 1, Section 8, cl. 18).

11. Importantly, the Necessary and Proper Clause is not a freestanding grant of congressional power, but rather an authorization to make laws that are necessary to execute both the powers vested in Congress by the preceding clauser of Section 8, and the powers vested in Congress and the other branches by other provisions of the Constitution. See, Kinsella v. United States ex. rel. Singleton, 361 U.S. 234, 247, 80 S. Ct. 297, 4 L. Ed. 2d 268 (1960).

12. In McCulloch v. Maryland, 4 Weat. 316, 4 L. Ed. 579 (1819), Chief Justice Marshall famously set forth the Court's interpretation of the Necessary and Proper Clause: "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist[ent] with the letter and spirit of the constitution, are constitutional."

13. Under this formulation, a federal law is a valid exercise of Congress' power under the Clause if it satisfies a two-part test. "First, the law must be directed toward a 'legitimate' end, which McCulloch defines as one 'within the scope of the [C]onstitution.'" United States v. Comstock, 560 U.S. 126, 160, 130 S. Ct. 1949, 176 L. Ed. 2d 878 (2010). "Second, there must be a necessary and proper fit between the 'means' (the federal law) and the 'end' (the enumerated power or powers) it is designed to serve." Comstock v. United States, 560 U.S. 130 S. Ct. 1949, 176 L. Ed. 2d 878. "The means Congress selects will be deemed 'necessary' if they are 'appropriate' and 'plainly-adapted' to the exercise of an enumerated power, and 'proper' if they are not otherwise 'prohibited' by the Constitution and not '[in]consistent' with its 'letter and spirit'" (quoting Art. 1, Section 8, cl. 18 and McCulloch).

14. Both parts of this test are critical. The Comstock Court held, "[N]o matter how 'necessary' or 'proper' an Act of Congress may be to its objective, Congress lacks authority to legislate if the objective is anything other than 'carrying into execution' one or more of the Federal Government's enumerated powers."

### ALLEGATION 1 - ULTRA VIRES

15. Inconsistent with Paragraph 9 herein, Congress failed to "base their conclusions (there by amending 2G2.2 of the Federal Sentencing Guidelines Manual, brought by the PROTECT Act of 2003) upon facts, and evidence informing their legislative decisions." The 2G2.2 Guideline and enhancements are "not the result of...expertise, [or] based on careful study [or] empirical data." See, e.g. United States v. Henderson, 649 F. 3d 955 (9th Cir. 2011); United States v. Dorvee, 616 F.3d 174 (2nd Cir. 2010), see too, The Sentencing Commission's, 'Special Report to Congress: Federal Child Pornography Offenses (2012), see also, United States v. Stone, 575 F.3d 83, 97 (1st Cir. 2009); United States v.

Cruikshank, 667 F. Supp. 2d 702; United States v. Tapp, 2010 U.S. LEXIS 115051, WL 4386523 (N.D. Ind. 2010); United States v. Marshall, 870 F. Supp. 2d 489 (6th Cir. 2012); United States v. Klear, 3 F. Supp. 2d 1202 (Dist. Cir. 10th Cir. 2012); United States v. Diaz, 720 F. Supp. 2d 1039 (E.D. Wis. 2010); United States v. Grober, 624 F.3d 592 (3rd Cir. 2010); United States v. Abraham, 944 F. Supp. 2d 723 (8th Cir. 2013), and United States v. Biddle, 2014 U.S. LEXIS 143733 (2014) (citing cases).

16. The fact is, the evidence points in the other direction. Sentencing courts are particularly troubled that the 2G2.2 Guidelines "have been repeatedly raised despite evidence and recommendations by the [United States Sentencing] Commission to the contrary." United States v. Hanson, 561 F. Supp. 2d 1004; 2008 U.S. Dist. LEXIS 47754 (E.D. Wis. 2008).

17. With each amendment to the 2G2.2 Guideline, including those brought by the PROTECT Act of 2003, "major changes would be directed not by experience and study, but instead by a general, moral sense that the penalties for 'smut peddlers' should always, and regularly, be made stricter, not weaker." United States v. Kelly, 868 F. Supp. 2d 1202 (Dist. Crt. 10th Cir. 2012), see also, Troy Stabenow, 'Deconstructing the Myth of Careful Study: A Primer On the Flawed Progression of the Child Pornography Guidelines (2009).'

18. Undoubtedly, legislative provisions and laws based upon congressional "moral sense," and enacted for personal political gain are superfluous. ("...crimes involving the exploitation of children provide fertile ground for grandstanding politicians...it's simple to conclude that the [2G2.2] Guidelines were modified for no other reason than to serve as a campaign folder for public officials." United States v. Cunningham, 680 F. Supp. 2d 844, 849 (N.D. Ohio 2010)), see too, United States v. R.V., 157 F. Supp. 3d 207 (E.D.N.Y. 2016) "the punitive stance of Congress stems from noting 'moral panic about sexual exploitation of children...[f]or a congressperson, addressing child pornography is akin to stepping onto the third rail."

19. As fully explained above, federal courts across the country, including the United States Sentencing Commission, and others, acknowledge and confirm the absence of any experience, data, evidence, expert opinion(s), facts, empirical data, and studies before the Congress, yet again, amended 2G2.2 of the Federal Sentencing Guidelines Manual.

20. Although rare, but as seen here, "there are times when Congress base their conclusions upon superfluous evidence" Covenant Med. Ctr., Inc. v. Burwell, 2015 U.S. App. LEXIS 3011 (6th Cir. 2015), when they (Congress) do, they act

"ultra vires." Courts have the duty to void those provisions as repugnant with the Peoples Law: the Constitution. See, Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803). Therefore, this Honorable Court has the duty to void the 2G2.2 amendments, brought by the PROTECT Act of 2003, in their entirety, because Congress based their conclusions upon superfluous evidence, acting ultra vires.

## ALLEGATION 2 - NECESSARY AND PROPER CLAUSE
(Art. 1, Section 8, cl. 18)

21. Inconsistent with Paragraphs 9 through 14 herein, Congress failed to meet any one of the two-part test required under the Necessary and Proper Clause (Art. 1, Section 8, cl. 18) with the enactment of the PROTECT Act of 2003, specifically, amending Section 2G2.2 of the Federal Sentencing Guidelines Manual.

22. First, the 'legitimate' (Paragraph 13) end test: the 2G2.2 amendments brought by the PROTECT Act of 2003 are not only unconstitutional because Congress acted ultra vires (as outlined within Paragraph 15 through 20), but too because, with respect to the administration of justice, "Sentencing Guidelines [generally] do not violate equal protection because Guidelines'...use is rationally [emphasis added] related to legitimate government interest in having more dangerous criminals serve longer sentences." United States v. Litteral, (1990, CA9 Cal) 910 F.2d 574.

23. Unarguably, as they stand today, Section 2G2.2 of the Federal Sentencing Guidelines Manual is in clear constitutional violation of due process, and equal protection under the FIFTH and FOURTEENTH AMENDMENT because it (the 2G2.2 Guideline) can not be "rationally" determined that "more dangerous criminals serve longer sentences," as outlined by the Court in Litteral, and because the Guideline encourages discriminatory enforcement against similar offenders.

24. As provided by a substantial number of courts from across the country, the current 2G2.2 Guideline construction fails to account for factors which indicate potential dangerousness. (See, e.g., United States v. Marshall, 870 F. Supp. 2d 489, 491-92 (N. D. Ohio 2012) ("under the Guidelines, some of the recommended sentences for viewers can, with enhancements, be higher than for actual predators...[i]n effect, the Guideline presume that those who view child pornography are indistinguishable from those who actually abuse children.") See, also, United States v. Cameron, 2011 U.S. Dist. LEXIS 24878, 2011 WL 890502 (D. Me. Mar. 11, 2011) (Defendant "is subject to nearly a ten-fold greater punishment for possessing images of someone else sexually abusing a minor than he would receive if he had committed the actual abuse himself.") See too, United States v. Westbrook, 2015 U.S. LEXIS 12930 (2015); United States v. Dorvee, 616 F.3d 174, 2010 WL 3023799 (2nd Cir. 2010) ("Had Dorvee actually engaged in sexual contact with a minor, his applicable guidelines range could be considerably lower.")

25. The Sixth Circuit Court in United States v. Walters, 775 F.3d 778 (6th Cir. 2014) provided "[n]umerous stakeholders -including the DOJ, the Federal Defender Community, and the Criminal Law Committee of the United States- have urged the Commission and Congress to revise the non-production sentencing scheme to better...account for offenders varying degrees of culpability and dangerousness." Moreover, the Tapp, Biddle, Grober, Dorvee, Abraham, Klear, and R.V. courts, among others, similarly concluded several enhancements under 2G2.2, brought by the PROTECT Act of 2003, have no practical value for sorting offender danger.

26. The United States Sentencing Commission itself in a letter to Congress, offered their expert opinion stating "the present child pornography guidelines have no rational basis...and do not distinguish adequately among offenders based on their culpability, potential future dangerousness, or risk of recidivism" (The United States Sentencing Commission's 'Report to Congress: Federal Child Pornography Offenses' (2012)).

27. The public have been taking notice. See e.g., Jeffery T. Ulmer, Mismatch of Guidelines and Offender Danger and Blameworthiness Departures as Policy Signals from the Courts, 13 Criminology & Pub. Pol'y 271, 275 (2014); Amir Erfati, Making Punishment Fit the Most Offensive Crimes, Wall St. J., Oct. 23, 2008; Carol S. Streiker, Lessons from Two Failures: Sentencing for Cocaine and Child Pornography under the Federal Sentencing Guidelines in the United States, 76 Law & Contemp. Probs. 27, 37 (2013); Mark Hansen, A Reluctant Rebellion, ABA J., (June 2009); Mark Osier, Indirect Harms and Proportionality: The Upside-Down World of Federal Sentencing, 74 Miss. L. J. 1, 13 (Fall 2004), and Tracy Read, Does the Punishment Fit the Crime for Child Porn?, News Herald (Nov. 19, 2009).

28. Conclusively, today's 2G2.2 Guideline clearly violates the U.S. Constitution's due process and equal protection clause under the FIFTH and FOURTEENTH AMENDMENT, as outline above (Paragraphs 22 through 27), the Guideline fails the 'legitimate' end test required under the Necessary and Proper Clauses broad reach.

29. Next, the United States Supreme Court reasoned with respect to the Fourteenth Amendment, the "administration of justice, requires that no different degree or greater punishment shall be imposed on one than on all others for like offenses." Moore v. Missouri, 159, U.S. 673, 40 L Ed 301, 16 S. Ct. 179 (1895); Hodgson v. Vermont, 168 U.S. 262, 42 L Ed 461, 18 S. Ct. 80 (1897).

30. Inconsistent with Paragraph 29 herein, the 2G2.2 Guideline, in its current formation, is currently, has been, and continues to violate the Supreme Court's controlling decision (Paragraph 29) with respect to the administration of

justice within the Fourteenth Amendment. Shockingly, "many prosecutors and courts are charging [emphasis added] and sentencing offenders to avoid the guidelines" altogether, creating "disparities for similar ["like"] offenders based on what court sentences them." United States v. Klear, 3 F. Supp. 3d 1298 (Dist. Crt. 11th Cir. 2013). An offenders term of imprisonment, or "degree" of "punishment" (Paragraph 29) becomes a so called luck-of-the-draw based upon what court imposes the sentence.

31. "The extensive disparities [or 'different degrees' of 'punishment'] in sentences given for non-production child pornography offenses under 2G2.2 has been well documented by the Sentencing Commission, Chapter 8: Examination of Sentencing Disparities in 2G2.2 Cases, 'Report to the Congress: Federal Child Pornography Offenses' (2007), and Melissa Hamilton, Sentencing Adjudication: Lessons from Child Pornography Policy Nullification, 30 Geor. St. U. L. Rev. 375 (2013)." United States v. Morgan, 2015 U.S. LEXIS 169760 (E.D. Virginia 2015).

32. The indisputable plain showing facts and evidence shown herein, of which is brought largely by federal agencies including the Federal Defender Community, United States Sentencing Commission, Department of Justice (DOJ), Criminal Law Committee of the Judicial Conference of the United States, District and Circuit Courts across the country, among other federal government agencies and public officials have all similarly established the Guideline (2G2.2) encourages discriminatory enforcement creating egregious sentencing disparities. Sentencing Courts issue "different degree[s]" of "punishment," in terms of incarceration to similar offenders found guilty of similar conduct. The result is erratic varying degrees of sentencing that directly conflicts with due process and equal protection under the U.S. Constitution. Therefore, the 2G2.2 Guideline, again, fails the "legitimate" end test as outlined in Paragraph 13. Accordingly, the Guideline violates the constitutional requirements called for under the Necessary and Proper Clause, and therefore shall be deemed as unconstitutional and void.

### ALLEGATION 3 - SEPARATION OF POWERS DOCTRINE, AND ARTICLE III

33. Lastly, with respect to the "legitimate" end test required for a congressional action (PROTECT ACT of 2003) to be constitutional under the Necessary and Proper Clause (Art. 1, Section 8, cl. 18), we should be alarmed. Disturbingly, several federal courts have, literally, rewritten Section 2G2.2 and are sentencing offenders based upon their legislative (emphasis added) conclusions and determinations, in so labeling their version of the Guideline "Modified 2G2.2 Framework." (United States v. Abraham, 944 F. Supp. 2d 723 (Dist. Crt. 11th Cir. 2013); United States v. Klear, 3 F. Supp. 3d 1298, 2014 U.S. Dist. LEXIS 21783 (2014), and United States v. Westbrook, 2015 U.S. Dist. LEXIS 12930, calling the revised framework as "The Klear Framework.").

34. These Courts are violating the separation of powers doctrine and Article III of the U.S. Constitution. Courts are being forced to go beyond their authorized duties by expanding their limited power provided to them under Article III in order to issue just and proper sentences. (See, Aubert v. Russell Collection Agency, Inc., 215 F. Supp. 3d 583 (Dist. Crt. 6th Cir. 2016) "The duty of the court is to interpret the words that the legislature has used.") These Courts have traveled well beyond their given power provided under Article III, and unconstitutionally revised, and rewritten 2G2.2's Base Level and other enhancements which originally been created and written by the legislative branch - (Art. I): Congress.

35. Not only does this raise serious federal questions and concerns, but too, further encourages and creates unwarranted sentencing disparities against federal jurisdictions with like offenders. This also burdens and requires the attention of the already scarce judicial resources.

36. The second part of the test required under the Necessary and Proper Clause had been outlined in Comstock, and McCulloch: "[T]here must be a necessary and proper fit between the 'means' (the federal law) [the modifications to 2G2.2 brought by the PROTECT Act of 2003] and the 'end' (the enumerated power or powers) it is designed to serve." (See, Paragraph 13).

37. The Plaintiff will re-allege Paragraphs 9 through 36, as if presented here showing the unconstitutionality of the 2G2.2 Guideline.

### COMMERCE & NECESSARY AND PROPER CLAUSE
### 'RATIONAL BASIS' TEST

38. The Supreme Court once said, we owe a large measure of respect to Congress when it frames and enacts economic and social legislation. See, Raich, 545 U.S. 125 S. Ct. 2195, 162 L. Ed. 2d 1, and Hodel v. Indiana, 452 U.S. 314, 326, 101 S. Ct. 2376, 69 L. Ed. 2d 40 (1981)("This [C]ourt will certainly not substitute its judgment for that of Congress unless the relation of the subject to interstate commerce and its effect upon it are clearly non-existent.") When appraising such legislation, the Court asks only (1)whether Congress had a "rational basis for conducting that the regulated activity substantially affects interstate commerce," and (2)whether there is a "reasonable connection between the regulatory means [federal laws] selected and asserted ends." See, Raich, 545 U.S. 125 S. Ct. 2195, 162 L. Ed. 2d 1; Lopez, 514 U.S. 115 S. Ct. 1624, 131 L. Ed. 2d 626; United States v. Carolene Products Co., 304 U.S. 144, 152-153, 58 S. Ct. 778, 82 L. Ed. 1234 (1938).

39. The commerce clause and the necessary and proper clause both contain a similar test: the "rational basis" test. The Necessary and Proper Clause, application of a "rational basis" test should be at least as exacting as it has been in the Commerce Clause cases, if not more so. "To sustain a federal sentencing statute against a due process or equal protection challenge, courts need only find 'Congress had a rational basis for its choice of penalties.'" United States v. Proyect, 989 F.2d 84, 88-89 (2nd Cir. 1983)(quoting Chapman, 500 U.S. at 465), see also, United States v. Coleman, 166 F.3d 428, 431 (2nd Cir. 1999)).

### ALLEGATION 4 - DUE PROCESS, EQUAL PROTECTION, NECESSARY AND PROPER CLAUSE "RATIONAL BASIS" TEST

40. Inconsistent with Paragraphs 9 through 14, 29, and 38 through 39 herein, Congress had no "rational basis" to amend Section 2G2.2 of the Federal Sentencing Guidelines Manual, brought by the PROTECT Act of 2003, and the amendments therein.

41. Numerous district and circuit courts found the 2G2.2 Guideline, in its current state, to be "irrational." (e.g., United States v. Grober, 595 F. Supp. 2d 382 (2008)(stating the "enhancements are not genuine aggravating factors" and using them is "irrational.") See too, United States v. Tapp, 2010 U.S. Dist. LEXIS 115051 (2010)("...the number-of-depictions enhancement is based on no study or evidence and has no practical value..."); United States v. Biddle, 2014 U.S. LEXIS 143733 (2014)("[A]s widespread as computer use is now, enhancing for use-of-computer is a little like penalizing speeding, but then adding an extra penalty if a car is involved.")(citing, United States v. Abraham, 944 F. Supp. 723 (2013), citing, United States v. Kelly, 868 F. Supp. 2d 1202, 1209 (D. N. M. 2012)). The Department of Justice has offered their opinion, "rationales for the child pornography Guidelines...have been shredded." (Department of Justice, Letter to the Honorable Patti B. Saris, [at the time] Chair of the United States Sentencing Commission (March 5, 2012)). United States v. Riley, 655 F. Supp. 2d 1298, 2009 U.S. Dist. LEXIS 88411 (D.C.S.D. Fla. Miami Div. 2009)("...in 2003, as part of the Feeney Amendment to the PROTECT Act, Congress added the 5 level enhancement for number of images. No research, study or rationale was provided for this huge increase.")

42. The Commission had conducted their own research and similarly concluded the Guideline to be "lacking any rational basis." (See, The Sentencing Commission's, Special Report to Congress: Federal Child Pornography Offenses (2012), also stating "in the opinions of experts in the field, including, psychologists, medical experts, and legal scholars who had studied the problem, the present child pornography guidelines have no rational basis")

43. The formulation of today's 2G2.2 Guideline is, was, and continues to be "irrational." The construction of the Guideline had been based upon irrational, and superfluous conclusions. Therefore, this Honorable Court has the duty to declare Sentencing Guideline 2G2.2 as in violation of the Necessary and Proper Clause, due process, and equal protection, because the Guideline fails the "rational basis" test required under the Constitution, as outlined above.

### ALLEGATION 5 - SENTENCING REFORM ACT OF 1984

44. The Guidelines were "developed to advance sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparence of punishment." Baird, 580 F. Supp. 2d 889, 2008 U.S. Dist. LEXIS 2338 (2008) (citing the United States Sentencing Commission, Fifteen Years of Guideline Sentencing (Nov. 2004)).

45. The Sentencing Reform Act of 1984, Section 217(a), 98 Stat. 2017. It charged the Commission with reducing "the great variation among sentencing imposed by different judges upon similarly situated offenders" and the resulting "uncertainty as to the time [each] offender would spend in prison." Mistretta, 488 U.S. 366, 109 S. Ct. 647, 102 L. Ed. 2d 714. The Act mandates a "system that imposes appropriately different sentences for criminal conduct of different severity." Rita v. United States, 551 U.S. 338, 349, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007).

46. Inconsistent with the above (Paragraphs 44 and 45), the Plaintiff will re-allege Paragraphs 21 through 43 as if stated here. That proved, the 2G2.2 Guideline undoubtedly, and plainly fails to meet the requirements within the Sentencing Reform Act of 1984, and the controlling decisions offered by the Supreme Court. Therefore, the Guideline shall be deemed void.

### FAILING TO PROTECT THE PUBLIC/PUBLIC INTERESTS

47. Section 2G2.2 of the Federal Sentencing Guidelines Manual is so seriously "flawed" (e.g., United States v. Diaz, 720 F. Supp. 2d 1039, 2010 U.S. Dist. LEXIS 659791, 2010 WL 2640630 (E.D. Wis. 2010); United States v. Riley, 655 Supp. 2d 1298 (S.D. Fla. 2009); United States v. McElheney, 630 F. Supp. 2d 886 (E.D. Tenn. 2009); United States v. Beiermann, 599 F. Supp. 2d 1087 (N.D. Iowa 2009); United States v. Phinney, 599 F. Supp. 2d 1037 (E.D. Wis. 2009); United States v. Dorvee, 616 F.3d 174, 2010 WL 3023799 (2nd Cir. 2010)(citing cases), they are drastically failing at protecting the public, because "they [2G2.2] fail to account for factors which indicate potential future dangerousness and recidivism." United States v. Klear, 3 F. Supp. 3d 1298 (2014). Which, in-turn, violates 3553(a)(2)(A). Perhaps politicians are failing

act due to the subject-matter involved. Undoubtedly, crimes involving the exploitation of children are sensitive issues, and the most severe penalties should be reserved for the most dangerous criminals, including their risk of recidivism. Sadly however, as previously discussed, the "seriously flawed" Guideline is failing at protecting the public and continues endanger the most vulnerable: children.

48. "[I]t's always in the public interest to prevent enforcement of unconstitutional law." Roe v. Snyder, 2017 U.S. Dist. Crt. 30002 (E.D. Mich. 2017), See too, Caspar v. Snyder, 77 F. Supp. 3d 616 (E.D. Mich. 2015)("the public interest is always served by robust protection of constitutional guarantees.")

### INJURY-IN-FACT

49. Had it not been for the existing unconstitutional congressional action within the PROTECT Act of 2003, the amendments therein, including the Feeney Amendment, which mandated the Commission to revise, and add too superfluous enhancements, which had been enacted while the Plaintiff was a member of the public - the Plaintiff in this case would have otherwise enjoyed constitutionally sound legislation. Further, because the Plaintiff is pro se, he had to conduct extensive federal law research, leaning federal and constitutional principles, and the proper way in which to challenge and apply its findings. This has forced undue stress and grave mental anguish upon the Plaintiff.

### CLAIMS FOR RELIEF

#### Count I

#### Fifth Amendment to the U.S. Constitution

50. Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 48 of this Complaint as if fully set forth here.

51. The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law."

52. Plaintiff, other third parties, and the public have constitutionally protected interests in, inter alia, the social legislation

viability of governmental operations.

53. The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of substantive due process, including the equal protection of the laws.

54. As described above, the actions of the Congress violate the Plaintiff's constitutionally protected rights (before its incarceration, as a citizen of the public) by not assuring due process of law is provided in the situations described in this Complaint.

## Count II

### Administrative Procedure Act, U.S.C. Section 701 et seq.

55. Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 48 of this Complaint, as if fully set forth here.

56. The Administrative Procedure Act provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statue, is entitled to judicial review thereof." U.S.C. Section 702.

57. The Administrative Procedure Act further empowers the court to "hold unlawful and set aside agency action, findings, and conclusions found to be...(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or short of statutory right" U.S.C. Section 706(2).

58. The pattern and practice of conduct of the Defendants as described above constitutes unlawful action that has caused Plaintiff to suffer legal wrong reviewable by this Court under the APA, 5 U.S.C. Section 706.

Count III

Declaratory and/or Injunctive Relief, 28 U.S.C. Section 2201 & Fed. R. Civ. P. 65

59. Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 48 of this Complaint, as if fully set here.

60. The Declaratory Judgment Act, 28 U.S.C. Section 2201, grants this Court authority to declare the Plaintiff's legal rights when an actual controversy exists.

61. Plaintiff and Defendants have adverse legal interests that are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in accordance with 28 U.S.C. Section 2201.

62. For the reasons stated above, Plaintiff is entitled to a declaration of its rights.

63. A failure to enjoin Defendant's unconstitutional, unlawful, and ultra vires conduct has and will continue to cause Plaintiff to suffer injury in that it will result in the deprivation of its Fifth Amendment Due Process, and equal protection rights, and its protections against agency action that is arbitrary, capricious, superfluous, in bad faith, and contrary to law.

64. No adequate remedy at law exits.

65. Defendants' unconstitutional and unlawful conduct will also adversely affect the interests of numerous third parties without advancing the public interest.

66. Plaintiff is entitled to injunctive relief enjoining Defendants from continuing their unconstitutional and unlawful pattern and practice of conduct as alleged in this Complaint.

67. Defendants have no protectable interest in the continuation of their unconstitutional and unlawful conduct.

## Count IV

### Necessary and Proper Clause to the U.S. Constitution (Art. 1, Section 8, cl. 18)

68. Plaintiff re-alleges and incorporates by reference all the allegations contained in Paragraphs 1 through 48 of this Complaint as if fully set forth here.

69. The Necessary and Proper Clause of Article 1, Section 8, Clause 18 of the U.S. Constitution grants the legislative "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by [the] Constitution in the Government of the United States, or any Department or officer thereof."

70. Plaintiff, other third parties, along with the public hold constitutionally protected interests in legislation viability of governmental operations.

71. As described above, the actions of the Congress ("Department" or "officers") violate the Plaintiff's, third party, and members of the public, constitutionally protected rights when the Congress introduced legislation that had been constructed well beyond the requirements of the necessary and proper clause as provided in the situations described in this Complaint.

## Count V

### Separation of Powers Doctrine, and Article III of the U.S. Constitution

72. Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 48 of this Complaint as if fully set forth here.

73. In short, the separation of powers doctrine guarantees three (3) separate branches of federal government: Legislative, Executive, and the Judicial - each to honor and respect their duties and not invade the duties of each other.

74. The Plaintiff has constitutionally protected interests in the separation of governmental operations and power as provided to it by Article I, II, III, and as guaranteed by the separation of powers doctrine in the U.S. Constitution.

75. The scope of the Judicial is strictly limited under Article III of the U.S. Constitution. the Judicial "is to interpret the words that the legislature has used," not to rewrite legislation as described in the situations within this Complaint (quoting, Aubert v. Russell Collection Agency, Inc., 215 F. Supp. 3d 583 (Dist. Crt. 6th Cir. 2016)).

76. As described above, the actions of the Judicial branch of government violate the Plaintiff's constitutionally protected rights where by the Judicial traveling beyond their limited power provided under Article III of the U.S. Constitution.

## PRAYER FOR RELIEF

Plaintiff, Jeremy D. Otrosinka, pro se, respectfully requests that this Honorable Court for the United States enter judgment in its favor and:

A. Declare that Defendants have violated Plaintiff's rights under the Fifth Amendment to the U.S. Constitution;

B. Declare that Defendant's pattern and practice conduct as set forth in this Complaint is, ultra vires, arbitrary, capricious, in bad faith, and contrary to law;

C. Declare Section 2G2.2 of the Federal Sentencing Guidelines Manual as, arbitrary, capricious, in bad faith, contrary to law, and unconstitutional;

D. Enjoin and restrain Defendants, their agents, members, employees, successors, and all persons acting in concert or participating with them, enforcing (e.g. United States Sentencing Commission, members of congress, etc...), applying, or implementing (or requiring others to enforce, apply or implement) the views, positions, pattern or practices in violation of the Constitution and law;

E. Award Plaintiff $5 million in damages;

F. Grant Plaintiff such other relief as may be necessary and appropriate or as the Court deems just and proper.

Dated: September, 5th, 2017

Jeremy D. Otrosinka - Plaintiff
ID 21214-055
P.O. Box 1000
Milan, MI 48160